UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Dennis Gallipeau, | C/A No. 3:23-cv-00543-JDA-MHC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Renewal by Andersen LLC, | |
| Defendant. | |

Plaintiff, proceeding pro se, filed the initial Complaint in this action on January 6, 2023, in the Court of Common Pleas of Richland County, South Carolina. ECF No. 1-1. Defendant Renewal by Andersen LLC ("Defendant" or "RbA") removed the case to this Court on February 8, 2023. ECF No. 1. On April 17, 2023, Plaintiff filed an Amended Complaint alleging that Defendant violated the Telephone Consumer Protection Act, the South Carolina Telephone Privacy Protection Act, and the South Carolina Unfair Trade Practices Act by calling Plaintiff's telephone number without his consent and engaging in a variety of "unfair" business practices. ECF No. 20.[1]

Presently before the Court is a Motion for Summary Judgment, ECF No. 90 ("Motion"), filed by Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff filed a Response in Opposition to the Motion, ECF No. 98, and Defendant filed a Reply, ECF No. 99. The Motion is ripe for review.

---

[1] Plaintiff's Amended Complaint also asserted claims against Window Replacement Columbia, ECF No. 20, but Plaintiff subsequently dismissed Window Replacement Columbia via a Stipulation of Dismissal filed on September 11, 2023, ECF No. 61.

1

This Report and Recommendation is entered for review by the District Judge.[2] For the reasons that follow, the undersigned recommends that the Motion be granted.

## FACTUAL BACKGROUND

Defendant Renewal by Andersen is the full-service window and door replacement division of its parent company, Andersen Corporation. ECF No. 90-2, Decl. of Beth Becker at ¶ 4. Defendant works with a nationwide network of window and door replacement specialists to offer its name-brand window replacement process that includes an in-home consultation, custom manufacturing, and installation. *Id.* at ¶ 5. To provide these nationwide, name-branded resources, Defendant works with both company-owned and independent retailers who are authorized and have exclusive rights to market, sell, and install Defendant's products in their contracted territories. *Id.* at ¶ 6. The independent local retailers are not owned by Defendant but rather are independently owned and operated businesses. *Id.* at ¶ 7. Although Defendant contracts with these independent, local retailers because they sell Defendant's products, Defendant does not control the day-to-day marketing activities of these companies. *Id.* at ¶ 8.

Defendant contracts with Sullivan Holdings, LLC ("Sullivan"), an independent retailer, which sells and installs its licensed products in Columbia, SC. *Id.* at ¶ 9. Sullivan contracts with a company named Telefluent to answer inbound calls and call its customers and prospective customers to set appointments. *Id.* at ¶ 10; ECF No. 90-3, Decl. of Bob Klane at ¶ 4. Defendant has no contractual (or other) relationship with Telefluent. ECF No. 90-2 at ¶ 10; ECF No. 90-3 at ¶ 8.

---

[2] All pretrial proceedings in this case were referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C.

In early November 2022, Plaintiff called a number that he believed belonged to Defendant and requested an appointment to assess replacement of his windows and doors. ECF No. 20 at ¶¶ 7–8; ECF No. 90-4, Pl. Dep. Tr. 19:16–24; ECF No. 90-3 at 8–12, Tr. of Nov. 11, 2023 Call Recording; *see* ECF No. 100, Nov. 11, 2023 Call Recording. A live representative answered the call as follows: "Thank you for calling Renewal by Andersen and Provia. How may I direct your call?" ECF No. 90-3 at 8; ECF No. 90-4 at 20:13–15. After Plaintiff provided his home address and his landline telephone number at issue in this suit, 803-834-6095, the live representative stated as follows to Plaintiff:

> Mr. Gallipeau, we are sensitive to your privacy. Typically, we need to contact you by phone and email about getting you the price quotes or to inform you about the products, warranties, services, or sales. We use an auto phone system to contact our customers and we just want to ensure we have your permission to contact you at the numbers you give us. Okay?

ECF No. 90-3 at 8. In response, Plaintiff stated, "Okay." *Id.*

On November 12, 2022, Plaintiff called back. *Id.* at 13. A live representative answered that call by saying, "Thank you for calling Renewal by Andersen. How may I help you today?" *Id.*; ECF No. 90-4 at 26:8–12; *see* ECF No. 100, Nov. 12, 2023 Call Recording. Plaintiff stated that he needed to cancel his appointment because he was going out of town and that he would call back to reschedule his appointment. ECF No. 90-3 at 13.

Plaintiff alleges in his Amended Complaint that between November 17, 2022, and January 24, 2023, he received twenty calls on his landline telephone number. ECF No. 20 at ¶¶ 11, 26. He testified at his deposition that he answered at least one of those calls but he did not speak to anyone and believes that the call was a recorded message. ECF No. 90-4, Pl. Dep. at 27:8–23. He also testified that he received at least one voicemail message, but he lost access to that message when he cancelled that phone service. *Id.* at 28:19–29:5.

3

In a declaration attached to his Response to the Motion for Summary Judgment, Plaintiff avers that he received a total of twenty calls, "all of which displayed the caller ID name as 'Renewal by Andersen.'" ECF No. 98-1 at ¶ 1. He avers that the twenty calls originated from three different phone numbers, "all of which were identified as South Carolina phone numbers." *Id.* at ¶ 2. He avers that he never consented or agreed to receiving twenty phone calls, and he further avers that he "called and withdrew whatever so-called 'consent' RbA claims [he] gave." *Id.* at ¶¶ 4–5. He further avers that it is clear to him that Defendant has "altered or deleted entire sections/parts of the phone calls" from the transcripts of the phone calls, including "what was said after I revoked whatever 'consent' RbA asserts [he] gave." *Id.* at ¶ 6. He avers that he "blocked one phone number and then another phone number and finally, to end the relentless harassment, [he] cancelled [his] phone service." *Id.* at ¶ 3. He further avers that when he cancelled his phone service, he did not know that the phone company would delete all voicemails. *Id.* at ¶ 7.

## **LEGAL STANDARD**

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Id.* at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, although the Court views all the underlying facts

and inferences in the record in the light most favorable to the non-moving party, the non-moving "party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson*, 477 U.S. at 256). That is to say, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). This "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (citation omitted); *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (noting "we are obliged to construe [a complaint's] allegations liberally and with the intent of doing justice"). However, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact when none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)

("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## DISCUSSION

Plaintiff asserts three claims in his Amended Complaint: (1) a claim for violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq.*; (2) a claim for violation of the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code Ann. § 37-21-10 *et seq.*; and (3) a claim for violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. ECF No. 20.

Defendant moves for summary judgment on all of Plaintiff's claims. ECF No. 90. Specifically, Defendant argues that it is not liable under any of Plaintiff's theories for any of the alleged acts because it had no interaction with Plaintiff prior to this lawsuit. ECF No. 90-1 at 6–8. Defendant further argues that Plaintiff cannot establish a TCPA claim because he called Sullivan and consented to further communications from Sullivan and because the live calls at issue are not subject to the TCPA's restrictions. *Id.* at 8–10. Defendant also argues that Plaintiff's SCTPPA claim fails because he consented to be contacted and the provision he claims Defendant violated is unconstitutional. *Id.* at 10–13. Finally, Defendant maintains that Plaintiff's SCUTPA claim fails because there is no specific section of the statute that Plaintiff can identify that Defendant could have violated. *Id.* at 13–14.

### I. Plaintiff's TCPA Claim

In his Third Cause of Action, Plaintiff alleges that Defendant placed calls to him on his home telephone number, which was "assigned to a land line telephone service." ECF No. 20 at ¶ 26. He alleges that these calls used an "automatic telephone dialing system" and caused his phone to ring an average of seventeen times before disconnecting. *Id.* at ¶ 27. He further alleges that

6

"many of these calls used a recorded or prerecorded or artificial voice" and were not placed for "emergency purposes," as defined by 47 U.S.C. § 227(b)(1)(A)(i). *Id.* at ¶¶ 28–29. He seeks an award of $500 in statutory damages for each call, as well as treble damages. *Id.* at ¶¶ 30–31.

Defendant argues that summary judgment should be granted in its favor on Plaintiff's TCPA claim because (A) Plaintiff cannot establish that Defendant is either directly liable or vicariously liable for the phone calls, and (B) the phone calls did not violate the TCPA. For the reasons that follow, the undersigned concludes that Defendant is entitled to summary judgment on the TCPA claim.

**A. Defendant is not liable under the TCPA for initiating the phone calls.**

"The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 297 (D.S.C. 2021) (quoting *Stewart v. T-Mobile USA, Inc.*, 124 F. Supp. 3d 729, 732 (D.S.C. Aug. 28, 2015)). As relevant here, it makes it unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. § 227(b)(1)(B). The TCPA provides a private right of action for any violation of this provision and permits the recovery of the greater of $500 or actual losses, with the potential for treble damages if a court determines that the violation was willful. *Id.* § 227(b)(3).

1. <u>Plaintiff has not established direct liability.</u>

"Direct liability under the TCPA . . . applies only to entities that 'initiate' the telemarketing calls." *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013)), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018).

A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *See Dish Network, LLC*, 28 F.C.C.R. at 6583. Accordingly, a seller generally does not "initiate" calls placed by third-party telemarketers. *See id.* at 6584; *Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 519.

The evidence before the Court, viewed in the light most favorable to Plaintiff, is insufficient to establish that Defendant was directly liable for any of the phone calls. There is no evidence before the Court that Defendant actually, physically initiated any calls to Plaintiff. Rather, the undisputed evidence establishes that Plaintiff initiated the first two calls and that Telefluent initiated the remaining calls. *See* ECF No. 90-2 at ¶ 10; ECF No. 90-3 at ¶¶ 4, 7. Accordingly, Defendant cannot be directly liable for any of the calls. *See Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 & n.3 (E.D. Va. Apr. 15, 2019) ("In order to establish that a defendant is directly liable under the TCPA, courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue."); *Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 519.

2. <u>Plaintiff has not established vicarious liability.</u>

"The Federal Communications Commission (the 'FCC') interprets the TCPA to [also] allow vicarious liability for violation of § 227(b)." *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 251 (4th Cir. 2018) (citing *Dish Network, LLC*, 28 FCC Rcd. at 6584). According to the FCC, vicarious liability under the TCPA is governed by the federal common law of agency, "including not only formal agency, but also principles of apparent authority and ratification." *Dish Network, LLC*, 28 FCC Rcd. at 6584; *see Hodgin*, 885 F.3d at 252 (same). "To determine these common law principles, courts have traditionally looked to the Restatement of Agency." *Hodgin*,

8

885 F.3d at 252 (citing *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 752 (1989); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997)).

For Plaintiff to establish that Defendant is vicariously liable for any of the challenged phone calls, Plaintiff must point to evidence sufficient for a jury to find an agency relationship between Defendant and Telefluent, the entity that placed the calls. *See Worsham v. Disc. Power, Inc.*, No. CV RDB-20-0008, 2022 WL 3100762, at *5 (D. Md. Aug. 4, 2022) ("To overcome [the defendant's] motion for summary judgment, [the plaintiff] must therefore produce evidence sufficient for a jury to find an agency relationship between [the defendant] and Hound Energy, the entity that placed the calls. He has failed to do so."), *aff'd*, No. 22-1942, 2023 WL 2570961 (4th Cir. Mar. 20, 2023). For the reasons set forth below, he has not done so.

a. *Actual Authority*

Formal agency, commonly called actual authority, exists when the principal expressly or implicitly grants the agent authority to perform a particular act. *Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520 ("A principal grants implied actual authority to an agent when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf."); Restatement (Third) Of Agency § 3.01 (2006) ("Actual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf.").

To establish actual authority, Plaintiff must point to evidence that Defendant manifested to Telefluent its assent that Telefluent act on Defendant's behalf. Plaintiff has not produced any such evidence in this case. The undisputed evidence shows that Defendant had no contractual relationship with Telefluent, which was a vendor of Sullivan, a retailer licensed to sell Defendant's products. ECF No. 90-2 at ¶ 10; ECF No. 90-3 at ¶¶ 4, 8. The evidence further establishes that

Defendant had no control over Sullivan or Telefluent's day-to-day marketing practices or their phone call practices. *Id.* There is no evidence in the record that Defendant had any communication of any type with Telefluent. On this record, Plaintiff cannot establish a vicarious liability claim based on actual agency. *See Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520 ("[I]n order to prove actual agency, the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted."); Restatement (Third) Of Agency § 3.01 (2006).

  b. *Apparent Authority*

"To create apparent authority, the principal must speak, write, or otherwise act toward a third party." *Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520 (citation and internal quotation marks omitted); Restatement (Third) Of Agency § 3.03 cmt. b (2006) ("[A]n agent's apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal."); *see also Moore v. N. Am. Van Lines*, 423 S.E.2d 116, 118 (S.C. 1992) ("The basis of apparent authority is representations made by the principal to the third party and reliance by the third party on those representations."). "Apparent authority is present only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation." Restatement (Third) Of Agency § 3.03 cmt. b (2006).

Plaintiff asserts in his affidavit that he "received a total of twenty (20) phone calls[,] all of which displayed the caller ID name as 'Renewal by Andersen.'" ECF No. 98-1 at ¶ 1. However, this evidence is insufficient to establish apparent agency, "as it is the *principal's* manifestations, not the *agent's*, that are determinative under agency law." *Worsham v. Disc. Power, Inc.*, No. CV

RDB-20-0008, 2022 WL 3100762, at *8 (D. Md. Aug. 4, 2022) (finding evidence that the caller stated that she was "calling on [defendant's] behalf and eventually offered [defendant's] public-facing customer service number" insufficient to establish agency relationship), *aff'd,* No. 22-1942, 2023 WL 2570961 (4th Cir. Mar. 20, 2023); *see Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996) ("[As] an agent cannot create his own authority to represent a principal, it follows that an agent's statements that he has such authority cannot, without more, entitle a third party to rely on his agency. An agent's authority must be conferred by some manifestation by the *principal* that the agent is authorized to act on the principal's behalf."); *Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 523 ("Manifestations or statements made by the agent are not sufficient to create an apparent agency relationship."); *see also Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 813 S.E.2d 292, 304 (S.C. Ct. App. 2018) ("The law is clear in this state that statements made by an agent concerning the existence or extent of his authority are insufficient standing alone to establish agency.").

There is no evidence before the Court that Defendant had any knowledge of Telefluent's calls (or even of Sullivan's day-to-day marketing practices), much less any contact with Plaintiff manifesting assent to action by Telefluent. Accordingly, there is no evidence to support a finding of apparent agency. *See Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520 ("The essential element [of apparent agency is that] there must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party" that another individual is an agent of the principal.); Restatement (Third) Of Agency § 3.03 cmt. b (2006) ("The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation.").

11

### c. Ratification

"Finally, ratification occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions. It requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction." *Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520 (internal citations and quotation marks omitted); *see* Restatement (Third) of Agency § 4.01 (2006). The Restatement provides that "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). A party "may ratify an act by failing to object to it or to repudiate it," *id.* at § 4.01 cmt. f., or by "receiving or retaining [the] benefits it generates," *id.* at § 4.01 cmt. g. However, a party "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge." *Id.* at § 4.06.

Again, there is no evidence before the Court that Defendant had any knowledge of Telefluent's calls (or even of Sullivan's day-to-day marketing practices) before this lawsuit was filed. Moreover, Plaintiff has not presented any evidence showing that Defendant received or retained any benefit from Telefluent's calls to Plaintiff. As such, Plaintiff has failed to produce evidence sufficient to establish vicarious liability through ratification.

Upon review of the evidence before the Court, the parties' arguments, and the relevant law, the undersigned finds that Plaintiff has failed to establish that Defendant was directly or vicariously liable for the phone calls, such that he cannot establish of violation of the TCPA by Defendant.

Accordingly, the undersigned recommends that Defendant's motion for summary judgment on Plaintiff's TCPA claim be granted.[3]

## II. Plaintiff's SCUTPA Claim

In his First Cause of Action, Plaintiff asserts a claim for violation of the SCUTPA, S.C. Code Ann. § 39-5-10 *et seq.*, based upon the twenty phone calls placed to Plaintiff between November 17, 2022, and January 24, 2023. ECF No. 20 at ¶¶ 15–18. Defendant moves for summary judgment on this claim. ECF No. 90.

The SCUTPA "declares unfair or deceptive acts or practices in trade or commerce [to be] unlawful." *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004) (citing S.C. Code Ann. 39–5–20(a)). The Act provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice . . . may bring an action . . . to recover actual damages." S.C. Code Ann. § 39–5–140(a).

To prevail on a claim under the SCUTPA, a plaintiff must establish that "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *See Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (quoting *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)). "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 188 (S.C. 2015) (citation and internal

---

[3] Because Plaintiff has failed to establish that Defendant could be liable under the TCPA for any of the phone calls, the undersigned does not reach Defendant's alternative arguments regarding the TCPA. *See* ECF No. 90-1 at 8–11.

quotation marks omitted). "A deceptive practice is one which has a tendency to deceive." *Id.* "Whether an act or practice is unfair or deceptive within the meaning of the SCUTPA depends upon the surrounding facts and the impact of the transaction on the marketplace." *Id.* Conduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim. *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 581 (D.S.C. 2003).

Upon review, the undersigned finds that Plaintiff has failed to establish a SCUTPA claim. As explained above, there is no evidence in the record that Defendant made any phone calls to Plaintiff, either directly or through an agent. *See* § I, *supra*. Rather, the undisputed evidence shows that Telefluent made all the phone calls to Plaintiff, and the evidence does not establish that Telefluent had actual or apparent authority to act on Defendant's behalf. *See id.*; *see also Roberson v. S. Fin. of S.C., Inc.*, 615 S.E.2d 112, 115 (S.C. 2005) ("An agent's authority is composed of his or her actual authority, whether express or implied, together with the apparent authority which the principal by his or her conduct is precluded from denying. . . . [A]pparent authority . . . is established based upon manifestations by the principal, not the agent[,] . . . [and] may not be established solely by the declarations and conduct of an alleged agent.") (citation omitted).

Because Plaintiff has failed to produce evidence sufficient to create a genuine issue of material fact that Defendant engaged in *any* act alleged in the Amended Complaint, it follows *a fortiori* that Plaintiff cannot establish that Defendant engaged in an unfair or deceptive act. Accordingly, the undersigned recommends that summary judgment be granted in Defendant's favor on the SCUTPA claim.

### III.   Plaintiff's SCTPPA Claim

Finally, in his Second Cause of Action, Plaintiff asserts a claim for violation of the SCTPPA, again based on the twenty phone calls he alleges Defendant made to Plaintiff. ECF No.

20 at ¶¶ 20–24. He specifically alleges that his phone number has been on the national Do Not Call Registry for more than ten years and that there is no signed, written agreement wherein Plaintiff "agreed to be contacted by [Defendant] or any of its agents." *Id.* at ¶¶ 20–24. Plaintiff further alleges that Defendant's "television commercials and info-mercials display a South Carolina phone number but calls placed to those phone numbers are routed to an out-of-sate call center." *Id.* Defendant moves for summary judgment on this claim. ECF No. 90.

The SCTPPA provides for a private right of action for damages for violation of the statute. S.C. Code Ann. § 37-21-80. In his Amended Complaint, Plaintiff specifically alleges that he is seeking damages "for each of the twenty (20) phone calls," pursuant to S.C. Code Ann. § 37-21-80. Based on Plaintiff's allegations, he appears to be alleging that the calls violated § 37-21-70(B), which provides that a "telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation to a telephone number on the National Do Not Call Registry maintained by the federal government." S.C. Code. Ann. § 37-21-70(B) (2018). Although less clear, he may also be alleging that the calls violated the anti-spoofing provision of the SCTPPA, § 37-21-50,[4] which a court in

---

[4] The Anti-Spoofing Statute provides:

> (A) Notwithstanding another provision of law, a person may not with the intent to defraud, harass, cause harm or wrongfully obtain anything of value, including, but not limited to, financial resources or personal identifying information as defined in Section 16-13-510, make, place, or initiate a call or text message or engage in conduct that results in the display of misleading, false or inaccurate caller identification information on the receiving party's telephone or otherwise circumvent caller identification technology that allows the receiving party to identify from what phone number, location, or organization the call or text message has originated from or misrepresent the origin and nature of the call or text message. A person may not, with the intent described in this subsection:
>
>> (1) display a South Carolina area code on the recipient's caller identification system unless the person making, placing, or initiating the call or text message maintains a physical presence in the State; or

15

this District recently found to be both preempted by the federal Truth in Caller ID Act and in violation of the U.S. Constitution's dormant Commerce Clause. *See United Res. Sys., Inc. v. Wilson*, 614 F. Supp. 3d 243, 256 (D.S.C. 2022).

Because Plaintiff cannot establish that Defendant made any phone calls to Plaintiff, either directly or through an agent, Plaintiff cannot establish a viable cause of action under the SCTPPA against Defendant. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be granted as to the SCTPPA claim.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 90) be **GRANTED**, and that this action be **DISMISSED with prejudice**.

**IT IS SO RECOMMENDED.**

The parties are referred to the Notice Page attached hereto.

June 24, 2024  
Charleston, South Carolina

Molly H. Cherry  
United States Magistrate Judge

---

(2) display the receiving party's telephone number on the contacted party's caller identification system.

S.C. Code Ann. § 37-21-50 (2018), *held unconstitutional by United Res. Sys., Inc. v. Wilson*, 614 F. Supp. 3d 243, 247–48 (D.S.C. 2022).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).